## SAN ANTONIO PUBLIC SERVICE CO. v. SCHOFF. (No. 7789.)

Court of Civil Appeals of Texas. San Antonio. May 25, 1927.

Rehearing Denied June 22, 1927.

Gas ⟐20(2)—Evidence held to sustain recovery against public service company for damages by fire due to defective gas meter.

In suit against public service company to recover damages for fire alleged to have resulted from leaking and defective gas meter furnished by defendant, evidence *held* to sustain finding for plaintiff.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Suit by C. E. Schoff against the San Antonio Public Service Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Thompson, Knight, Baker & Harris, of Dallas, and John Sehorn and Edwin Sehorn, both of San Antonio, for appellee.

COBBS, J. As appellant's statement of the case is not challenged, we adopt it, for we likewise find it supported by the record:

"Mr. C. E. Schoff owned a residence in San Antonio, Tex., upon which he carried fire insurance in the Continental Insurance Company of New York and the National Fire Insurance Company of Hartford, Conn. On the morning of January 20, 1922, his house caught on fire, and was damaged to the extent of about $2,200. The insurance companies paid Mr. Schoff $2,240 fire insurance on his house, settled with him in full for all damages done by the fire, and took from him a written subrogation receipt and assignment of claim, transferring to said insurance companies all the claims for damages he had against any persons or corporations for setting fire to his house.

"This suit was brought against the San Antonio Public Service Company in the name of Mr. Schoff, but really for the benefit of the said two fire insurance companies under their subrogation agreement. In the plaintiff's petition it was claimed that a leaky, defective gas meter of the defendant, San Antonio Public Service Company, caused the house to catch on fire.

"The defendant denied that it was in any way negligent in respect to its gas meter, denied that its meter was defective, and denied that its meter caused the fire.

"The plaintiff put on only two witnesses, Mr. and Mrs. C. E. Schoff, who were living in the house at the time of the fire. At the close of the plaintiff's testimony, the defendant duly moved for an instructed verdict, which was refused. The defendant did not put on any proof of any kind. The jury answered all of the questions in favor of the plaintiff and against the defendant.

"Judgment was entered for the plaintiff C. E. Schoff, for the use and benefit of the two insurance companies, for the sum of $3,041.61, which was the damage done to the house by the fire, and interest."

There are a number of assignments made complaining of alleged errors made by the court, all of which we have considered and passed upon. This is purely a fact case, and the judgment throughout challenged on the main ground that the evidence is wholly insufficient to sustain the verdict that the meter was in a defective condition due to defendant's negligence, and that such negligence caused the fire resulting in the loss complained of and causing the damages resulting therefrom.

Appellant introduced no witnesses whatever, but stood on the testimony introduced by appellee, which was the testimony of appellee and his wife, whose testimony made at least a clear prima facie case of appellant's negligence.

The meter in use by appellee was owned by appellant, who installed it in the premises and controlled it. The day before the fire appellee's wife discovered the odor of gas coming from the basement of the house, where the meter and furnace were located, and

called upon appellant to investigate the situation and repair the meter. She attempted to, and did, temporarily stop the escaping gas with soap that she forced in the crook or hole in the meter through which the gas was supposed to be escaping. Appellant sent two of its employees to rectify the trouble. She directed them to the furnace and meter in the basement, and indicated to them what she supposed the trouble to be, and what she had done, and then left them to fix it.

The following morning appellee, before eating his breakfast, as usual started the fire in the furnace, and, as he was leaving to go to his business, having finished his breakfast, a servant discovered fire in the basement, and gave the alarm to him, whereupon he entered the basement with his wife, and there discovered the blaze of fire in the meter, which they endeavored to extinguish, but could not, and promptly sought the assistance of the fire department of the city, and it was unable to arrest the fire, which destroyed the property and caused the damage complained of. Among other things, appellee testified:

"Well, I saw the furnace full of fire down there in the basement. I didn't see any other cause that could possibly be that I could say that I saw. There was no one down there lighting any matches. I will have to answer that by saying the only other cause that I saw was knowing that there was a fire in the furnace.

"Yes, sir; when I went down there, I saw a blaze. It appeared to be around the gas meter. I didn't see any other blaze except that. I don't know whether that is where the fire went up from and burned the house. I should say it was about two feet and a half from the wall. The fire went right up between the inner and outer wall of the house, and then went up to the roof; that is what burned it. There was a blaze in the furnace that went right up the chimney. The blaze was in the container of the furnace, I presume it was.

"As far as I observed, there was no blaze outside of the furnace except the blaze of the gas from the meter. The blaze that I saw was coming from the meter; that was gas burning."

It is not shown what appellant's employees did to stop the leak of gas or correct the defects in the meter through which gas escaped, supposing them to be experts or competent to do the work. The failure to put them on the witness stand, that their testimony might illuminate the situation or tend to explain the alleged defects in the gas meter or disprove the charge of the defects, is a strong circumstance that might be considered by the jury against the appellant thus failing. The argument of appellant that the two men sent out were men of experience and inferentially such men repaired the work, is an argument in favor of the contrary proposition. At any rate, appellant did not use them for that purpose. It may be that the soap Mrs. Schoff

used, to use a common expression among fisherman, to "chink up the leak" in a boat, was left there. If the men were experienced and repaired the defect, the court and jury were deprived of the benefit of their testimony. Still, if the gas leaked the day before the fire, and they repaired, we find the next day that the gas meter was on fire and it destroyed the house. If that be the logic, the sequence must also be indulged in that the cause was a defective meter.

We find no material errors assigned that should cause a reversal. The assignments are overruled, and the judgment must be affirmed.

FLY, C. J., disqualified, not sitting.